IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 7:09-CR-79-D
No. 7:12-CV-265-D

| | | |
|---|---|---|
| LUIS ALBERTO BECERRA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On September 13, 2012, Luis Alberto Becerra ("Becerra"), a federal inmate proceeding pro se, moved to vacate and set aside his 120-month sentence pursuant to 28 U.S.C. § 2255 [D.E. 94]. On February 4, 2013, Becerra moved to obtain his docket sheet [D.E. 104]. On March 2, 2013, the United States ("government") moved to dismiss Becerra's motion [D.E. 105]. On March 4, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Becerra about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 107]. On March 25, 2013, Becerra responded in opposition to the government's motion to dismiss [D.E. 108]. As explained below, the court grants the government's motion to dismiss, dismisses Becerra's section 2255 motion, and denies Becerra's request for a docket sheet.

I.

On June 24, 2009, a grand jury in the Eastern District of North Carolina indicted Becerra for conspiracy to possess with the intent to distribute 500 grams or more of cocaine and 50 grams or more of cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession with the intent to distribute more than 50 grams of cocaine base (crack), in violation of 21 U.S.C.

§ 841(a)(1). See [D.E. 1].

On February 8, 2010, the court arraigned several defendants, including Becerra. See [D.E. 58]. The court asked all defendants present, including Becerra, whether "any defendant . . . has taken any drugs, medicine, pills, or drunk any alcoholic beverages in the last 24 hours." Arraignment Tr. [D.E. 84] 14. Becerra did not indicate that he had. See id. 12. The court then asked whether "any defendant . . . does not understand what is happening [in court] today." Id. Becerra did not indicate that he did not understand. See id. Next, the court asked each lawyer representing a defendant whether the lawyer had "any doubt or questions about [his] client's competence to enter a plea" that day. Id. Becerra's attorney, Geoffrey W. Hosford ("Hosford"), voiced no concerns. See id. The court advised Becerra and the other defendants about all of their rights under the Constitution and laws of the United States and the consequences of pleading guilty. See id. 4–13; cf. Fed. R. Crim. P. 11(b).

After Becerra was sworn, the court asked Becerra specifically whether he had heard all of the questions the court asked the defendants as a group. Arraignment Tr. 17. Becerra, speaking under oath, stated that he did. Id. Becerra did not indicate that he wished to change his answer to any of the court's earlier questions. See id. Specifically, Becerra provided no indication that he was presently suffering from any deficient mental state, that he was presently under the influence of drugs, alcohol, or medications, or that he was unable to hear and understand the proceedings. See id. The court then asked Hosford whether he had any reason to believe that Becerra was not competent to proceed with his arraignment. Id. Hosford did not. Id. The court next asked the Assistant United States Attorney ("AUSA") whether he had any reason to believe that Becerra was not competent to proceed with his arraignment. Id. The AUSA did not. Id. 15.

Satisfied that Becerra was competent to proceed, the court conducted a Rule 11 colloquy.

2

See id. 17–35. The court first advised Becerra of the charges against him and of the potential penalties Becerra faced. See id. 17–20. Becerra stated, under oath, that he understood the charges against him and the potential penalties he faced. Id. 19–20. The court then asked Becerra if he understood the consequences of pleading guilty, as previously described by the court. Id. 20; see id. 4–13. Becerra stated, under oath, that he understood. Id. 20. The court informed Becerra that if he went to trial, "the government would have to prove through competent evidence and beyond a reasonable doubt to a jury that [Becerra], in fact, did what the grand jury charges." Id. Becerra stated, under oath, that he understood. Id. The court also asked Becerra whether he understood that by pleading guilty, he would waive his right to require the government to prove every element of the charged offenses beyond a reasonable doubt. See id. 5–6, 20. Becerra, under oath, stated that he understood. Id. 20. The court then discussed Becerra's plea agreement, making special note of the appellate and collateral-attack waiver provision contained in paragraph 2(c). See id. 22–23; see also [D.E. 59] ¶ 2(c). Becerra stated that he understood the waiver provision. Arraignment Tr. 23.

The court asked Becerra several questions regarding whether Becerra was knowingly and voluntarily pleading guilty. See id. 21–25. Becerra stated under oath that his guilty plea was knowing and voluntary. See id.

Becerra then pleaded guilty, pursuant to his written plea agreement, to conspiring to possess with the intent to distribute 500 grams or more of cocaine and 50 grams or more of cocaine base (crack). Id. 26; see [D.E. 59] ¶ 3. However, Becerra denied committing the charged conduct with respect to crack cocaine, and stated that he had never possessed crack cocaine, only powder cocaine. Arraignment Tr. 26–29. However, the AUSA proffered testimony that the substance found in Becerra's possession, which Becerra believed to be powder cocaine, had been scientifically analyzed and determined to be crack cocaine. Id. 30–31. Hosford agreed that the substance had been

3

independently identified as cocaine base. Id. 31.

The court received a proffer from the government as to what the evidence would have shown had Becerra gone to trial. See Arraignment Tr. 29–33. The court determined that it could accept Becerra's guilty plea as a matter of law despite Becerra's misgivings about the crack cocaine charge. Id. 33–35. Hosford and the AUSA concurred. Id. The court then found and announced that an independent factual basis supported Becerra's guilty plea. Id. 34–35. The court then found and announced that Becerra's guilty plea was freely and voluntarily entered, and the court accepted the guilty plea. Id. 35.

On July 8, 2010, the court held a sentencing hearing in Becerra's case. See [D.E. 74]. After Becerra was sworn, the court again found that Becerra was competent. Sentencing Tr. [D.E. 85] 2–3. The court then asked Becerra and Hosford whether they had received copies of the Presentence Report. Id. 4. Both affirmed that they had. Id. 4–5. The court then determined that the advisory guideline range was 120 to 121 months based on Becerra's offense level, criminal history category, and the ten-year mandatory minimum sentence. Id. 5–6. After hearing from Hosford, Becerra, and the AUSA, and after considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Becerra to 120 months' imprisonment for his conspiracy conviction, and dismissed the remaining count in Becerra's indictment. See [D.E. 74–75].

Becerra appealed his sentence, arguing that his guilty plea was not knowing and voluntary. See United States v. Becerra, 433 F. App'x 186, 186 (4th Cir. 2011) (per curiam) (unpublished). The Fourth Circuit rejected the argument and affirmed Becerra's sentence. Id. at 187–88.

On September 13, 2012, Becerra filed a section 2255 motion. See [D.E. 94]. On October 1, 2012, Becerra filed a supporting memorandum. See [D.E. 99]. In his section 2255 motion and memorandum, Becerra raises five claims: (1) Hosford provided ineffective assistance of counsel by

4

failing to object to Becerra's guilty plea after Becerra denied responsibility for possessing crack cocaine, Mem. Supp. Mot. Vacate 5, 7; (2) Hosford provided ineffective assistance of counsel by failing to request a continuance of Becerra's sentencing hearing until after the enactment of the Fair Sentencing Act of 2010 ("FSA"), Pub. L. 111-220, 124 Stat. 2372, Mem. Supp. Mot. Vacate 5–7; (3) Hosford provided ineffective assistance on appeal by filing an Anders brief instead of arguing for application of the FSA, Mot. Vacate 4; (4) Becerra's sentence violates the Equal Protection Clause of the Fifth Amendment, Mem. Supp. Mot. Vacate 6; and (5) Becerra's sentence amounts to cruel and unusual punishment in violation of the Eighth Amendment. Id. 6–7. On March 2, 2013, the government moved to dismiss Becerra's motion [D.E. 105–106]. On March 25, 2013, Becerra responded in opposition to the government's motion to dismiss [D.E. 108].

II.

In analyzing a motion to dismiss for failure to state a claim upon which relief can be granted, a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Iqbal, 556 U.S. at 678–79. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79.

The standard used to evaluate the sufficiency of the pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings

5

drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 678–79; Coleman, 626 F.3d at 190; Nemet Chevrolet, 591 F.3d at 255–56; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

In his section 2255 motion, Becerra raises three claims of ineffective assistance of counsel. "The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted); see Strickland v. Washington, 466 U.S. 668, 686 (1984). A defendant is entitled to effective assistance of counsel when pleading guilty, and a guilty plea that, due to counsel's ineffective assistance, was involuntary or unknowing cannot stand. See Hill v. Lockhart, 474 U.S. 52, 56–57 (1985); Fields v. Att'y Gen., 956 F.2d 1290, 1296–97 & n.17 (4th Cir. 1992). Likewise, "sentencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996); see Glover v. United States, 531 U.S. 198, 203–04 (2001). Similarly, defendants are "constitutionally entitled to the effective assistance of counsel on direct appeal." Williams v. French, 146 F.3d 203, 210 (4th Cir. 1998). An individual alleging ineffective assistance of counsel must demonstrate that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance caused the individual prejudice. See Strickland, 466 U.S. at 687–88; see also Missouri v. Frye, 132 S. Ct. 1399, 1409–10 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 1384–85 (2012); Hill, 474 U.S. at 57; Bell v. Jarvis, 236 F.3d 149, 164

6

(4th Cir. 2000) (en banc).

As for Strickland's first requirement, "the proper standard for attorney performance is that of reasonably effective assistance." Strickland, 466 U.S. at 687. When it considers whether an individual has satisfied this requirement, a reviewing court must judge counsel's conduct against "an objective standard of reasonableness." Van Hook, 558 U.S. at 7 (quotation omitted); see Strickland, 466 U.S. at 688. Counsel necessarily makes numerous tactical decisions during the various phases of a criminal proceeding, including sentencing. See Strickland, 466 U.S. at 688–89; see also Wiggins v. Smith, 539 U.S. 510, 521–23 (2003). Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008).

As for Strickland's second requirement, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691; see Van Hook, 558 U.S. at 12. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. When a defendant alleges ineffective assistance of counsel in connection with a guilty plea and makes no contention concerning plea bargaining, he must show that, but for counsel's error, there is a reasonable probability that he would have gone to trial instead of pleading guilty. See Fields, 956 F.2d at 1297; cf. Frye, 132 S. Ct. 1409–10. Similarly, when a defendant alleges ineffective assistance of counsel at sentencing, he must show that, but for counsel's error, there is a reasonable probability that he would have received a shorter sentence. See Glover, 531 U.S. at

7

203–04; see also Lafler, 132 S. Ct. at 1386.

"[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695. In analyzing an ineffective assistance of counsel claim, a court may rely on its own familiarity with the case. See Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

In his first claim for ineffective assistance of counsel, Becerra argues that Hosford failed to object to Becerra's guilty plea after Becerra denied responsibility for possessing crack cocaine. Mem. Supp. Mot. Vacate 5, 7. During Becerra's plea colloquy, Becerra denied that he possessed crack cocaine, and stated that he had possessed only "cocaine in powder form," not crack cocaine. Arraignment Tr. 26–27. Becerra now contends that Hosford was constitutionally ineffective in failing to object to his guilty plea after Becerra denied possessing crack cocaine.

Failure to make a futile objection is not ineffective assistance. See, e.g., Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010). The government need not prove knowledge of the exact nature of a controlled substance, but only that the defendant knew he possessed a controlled substance. United States v. Brower, 336 F.3d 274, 277 (4th Cir. 2003). The fact that Becerra did not know he possessed crack cocaine was irrelevant to his guilt because he admitted to possessing powder cocaine. See Arraignment Tr. 27. Moreover, Hosford admitted that Becerra's own expert determined the substance was crack cocaine. Id. 31. Hosford had no factual or legal basis to object to Becerra's plea of guilty to conspiracy to possess with the intent to distribute 500 grams or more of cocaine and 50 grams or more of cocaine base (crack). Therefore, his failure to object was not unreasonable and did not prejudice Becerra. Finally, the Fourth Circuit affirmed that Becerra's guilty plea was knowing and voluntary and supported by an adequate factual basis. Becerra, 433 F. App'x at 187–88. Consequently, Becerra's first claim fails.

8

In his second claim of ineffective assistance of counsel, Becerra argues that Hosford provided ineffective assistance of counsel by failing to request a continuance of Becerra's sentencing hearing until after the passage of the FSA. Mem. Supp. Mot. Vacate 5–7. Specifically, Becerra argues that Hosford should have moved to continue the sentencing hearing because Hosford "was aware that the House [of Representatives] was due to vote on the passage of the [FSA] which would have [made] a significant difference in the [m]andatory [m]inimum of this instant case." Id. 7.

Failure to anticipate a change in the law is not ineffective assistance of counsel. See United States v. McNamara, 74 F.3d 514, 516–17 (4th Cir. 1996). When Becerra was sentenced, the House had not yet passed the FSA, and there was no guarantee if or when the FSA would become law. Therefore, Hosford's failure to seek a continuance pending passage of the bill was not objectively unreasonable. See id. Furthermore, Becerra cannot show any prejudice resulting from Hosford's failure to seek a continuance. The court would not have granted a continuance to await indefinitely the law's uncertain passage. Even if the court granted a continuance, Becerra has not shown that his sentence would have been any different. See United States v. Copeland, 707 F.3d 522, 530–31 (4th Cir. 2013). Becerra was sentenced to 120 months, and this sentence complies with the new statutory minimum and maximum that would apply to Becerra under the FSA. See FSA § 2. Thus, there is no prejudice or miscarriage of justice, and Becerra's second ground for relief fails.

In his third claim for ineffective assistance of counsel, Becerra argues that on direct appeal Hosford provided ineffective assistance by filing an Anders brief instead of arguing for application of the FSA. Mot. Vacate 4.

The FSA does not apply to defendants convicted and sentenced prior to August 3, 2010. See Dorsey v. United States, 132 S. Ct. 2321, 2335 (2012); United States v. Allen, No. 12-4168, 2013 WL 1777564, at *7–8 (4th Cir. Apr. 26, 2013); United States v. Bullard, 645 F.3d 237, 248 (4th

9

Cir.), cert. denied, 132 S. Ct. 356 (2011). Hosford therefore did not act objectively unreasonably by failing to argue for application of the FSA to Becerra, and no prejudice resulted. Furthermore, because Hosford did not provide ineffective assistance of counsel by failing to request a continuance pending enactment of the FSA, Hosford's failure to raise a claim of ineffective assistance on direct appeal was not objectively unreasonable and did not prejudice Becerra. See United States v. Bernard, 708 F.3d 583, 593 (4th Cir. 2013). Accordingly, Becerra's third claim fails.

In his fourth claim, Becerra argues that his sentence violates the Equal Protection Clause of the Fifth Amendment. Mem. Supp. Mot. Vacate 6. Specifically, Becerra argues that "all similarly situated persons should be treated alike" and that the failure to give Becerra the benefit of the FSA denied him equal protection of the law. Id. To the extent Becerra challenges the sentencing disparity between powder cocaine and cocaine base, the Fourth Circuit has repeatedly affirmed the constitutionality of that disparity. See, e.g., Bullard, 645 F.3d at 246. To the extent Becerra challenges the disparity between those sentenced before and those sentenced after the effective date of the FSA, "any such concerns are resolved by Congress' rational basis for limiting the FSA's retroactive effect—its interest in the finality of sentences." United States v. Bigesby, 685 F.3d 1060, 1066 (D.C. Cir. 2012) (quotation omitted); cf. Hunt v. Nuth, 57 F.3d 1327, 1336–37 (4th Cir. 1995). Accordingly, Becerra's fourth claim fails.

In his fifth claim, Becerra argues that his sentence amounts to cruel and unusual punishment in violation of the Eighth Amendment. Mem. Supp. Mot. Vacate 6–7. Specifically, Becerra contends that "failure to apply the FSA to all offenders sentenced under 21 U.S.C. § 841(b)(1) . . . violates the Eighth Amendment" because the FSA is Congress's acknowledgment that "crack offenders sentenced prior to [the FSA's] enactment received sentences grossly . . . disproportionate and excessive for the crime." Id. The disparity between powder and crack cocaine sentences does

not result in sentences that violate the Eighth Amendment's prohibition of cruel and unusual punishments. United States v. Hairston, 46 F.3d 1127, 1995 WL 54010, at *6 (4th Cir. 1995) (per curiam) (unpublished table decision); United States v. Frazier, 981 F.2d 92, 95–96 (3d Cir. 1992); United States v. Avant, 907 F.2d 623, 627 (6th Cir. 1990); United States v. Buckner, 894 F.2d 975, 980–81 (8th Cir. 1990); United States v. Cyrus, 890 F.2d 1245, 1248 (D.C. Cir. 1989). Accordingly, Becerra's fifth claim fails.

After reviewing the claims presented in Becerra's section 2255 motion, reasonable jurists would not find the court's treatment of any of Becerra's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c).

III.

In sum, the court GRANTS the government's motion to dismiss [D.E. 105] and DISMISSES Becerra's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [D.E. 94]. The court DENIES a certificate of appealability. Finally, the court DENIES without prejudice Becerra's request for a docket sheet [D.E. 104]. Becerra may obtain a copy of the docket sheet by writing to the Clerk of Court and paying the per page rate.

SO ORDERED. This 23 day of May 2013.

JAMES C. DEVER III
Chief United States District Judge